**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Danny OWENS (95–6357), Blake Owens (95–6405), Ira John Woodfin (95–6631), and Kaye Miller Bennett (95–6632), Defendants–Appellants.**

Nos. 95–6357, 95–6405, 95–6631 and 95–6632.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 4, 1998.

Decided Oct. 20, 1998.

Frederick H. Godwin, Asst. U.S. Attorney (argued and briefed), Office of U.S. Attorney, Memphis, TN, for Plaintiff–Appellee.

Robert G. Gilder (briefed), Jefferson D. Gilder (argued), Southaven, MS, for Defendant–Appellant in docket No. 95–6357.

Blake Owens, Medical Center for Federal Prisons, Springfield, MO, John M. Colette (argued and briefed), John M. Colette & Associates, Jackson, MS, for Defendant–Appellant in docket No. 95–6405.

Wayne Chastain (argued), Memphis, TN, Ira John Woodfin, Forrest City, AR, Kathleen L. Caldwell (briefed), Taylor, Halliburton, Ledbetter & Caldwell, Memphis, TN, for Defendant–Appellant in docket No. 95–6631.

Robert E. Harrison (argued and briefed), Harrison & Goin, Scottsville, KY, for Defendant–Appellant in docket No. 95–6632.

Before: KRUPANSKY, NORRIS, and SILER, Circuit Judges.

## OPINION

SILER, Circuit Judge.

Defendants appeal their convictions and sentences for their roles in an interstate drug, prostitution, and gambling conspiracy. They raise numerous issues, including: (1) admission of evidence of violent and racial

incidents at the business; (2) exclusion of evidence tendered for the defendants; (3) the constitutionality of the statutes involved; (4) bias by the district judge; (5) erroneous instructions; and (6) sentencing errors. As set forth below, we AFFIRM.

## I. BACKGROUND

In 1992, nine persons, including appellants, were indicted for conspiracy and substantive charges relating to a gambling, prostitution, and drug trafficking operation. Among the accused were: Danny Owens ("Danny"), the owner of the business establishments—predominantly topless clubs and "peep shows"—out of which the operation ran; Blake Owens ("Blake"), Danny's son and apparently a partner or employee at one or more of those business establishments; Ira John Woodfin, a manager at one such business establishment called "Eve's"; and Kaye Miller Bennett, a manager at another such business establishment called "Danny's."

Danny was indicted for: (1) conspiracy to operate an illegal gambling business in violation of 18 U.S.C. § 1955, to use facilities in interstate commerce in aid of racketeering in violation of 18 U.S.C. § 1952, to conceal the nature of an interstate prostitution enterprise by laundering money in violation of 18 U.S.C. § 1956, and to conceal the nature of an interstate gambling enterprise by laundering money in violation of 18 U.S.C. § 1956, all in violation of 18 U.S.C. § 371 (Count I); (2) conspiracy to distribute Schedule II controlled substances in violation of 21 U.S.C. § 846 (Count II); (3) possession with intent to distribute a Schedule II controlled substance in violation of 21 U.S.C. § 841(a)(1) (Count III); (4) operation of an illegal gambling business in violation of 18 U.S.C. § 1955 (Count IV); and (5) money laundering in violation of 18 U.S.C. § 1956(a)(1) (Counts IX–XXIV). Blake was only charged in Counts I and IV. Woodfin was indicted under Counts I, IV, IX, and X, and with three other money laundering counts (Counts XXV–XXVII). Finally, Bennett was charged in Counts I, II, and IV.

After a lengthy trial, Danny was convicted on all counts except Counts II, III, and XXII–XXIV. Blake and Woodfin were found guilty on all counts. Finally, Bennett was convicted on Counts I and IV, but not Count II.

In the course of the trial, the United States introduced evidence of an overt act in furtherance of the gambling conspiracy in which Danny and Blake restrained and beat John Howard, an employee they suspected of having stolen money out of electronic gambling machines Danny owned. The Owenses handcuffed Howard, stretched him over a desk in an office, pulled his trousers down, and beat him with a large wooden paddle. When Howard attempted in the course of the beating to stand, Blake prevented him from doing so by forcing the point of his elbow into Howard's back. As a result of the episode, Howard suffered scarring and severe bruising. The government also introduced evidence that Danny enforced certain racist policies in his clubs.

Further, the defendants attempted to introduce evidence with respect to the role of an Assistant United States Attorney not associated with the instant prosecution. They alleged he had a vendetta against Danny, and improperly used Steve Cooper, a competitor, in procuring witnesses and in accumulating evidence. In opening argument, counsel for Danny indicated that the jury would see that the prosecution of his client was the product of ill-feeling by AUSA Tim DiScenza toward Danny and the financial motives of Cooper in eliminating competition. The court, however, limited all inquiry into DiScenza's and Cooper's roles in the prosecution to any influence they might have exercised over testifying witnesses. In addition, it refused to permit defense counsel to attempt improperly to create an impression in the jurors' minds that either DiScenza or Cooper threatened or influenced a witness.

The court also declined to permit the defendants to introduce evidence of common practices within the topless bar industry. A key element of the government's case concerned the use of "fines" for dancers who would leave one of Danny's topless clubs during their shift. The government alleged that the fines were the method used by management to collect its share of the money a

dancer derived through prostitution. In order to counter the government's theory, the defendants sought to question witnesses about the practices of other topless bars in the area with respect to fines.

In addition, in the course of the three-month trial, the district court periodically interrupted questions by the defense either in order to allow the prosecution to object to a question or answer, or to interject its own observations. Defendants cite eighty-four instances in which the district judge: (1) interrupted witnesses to tell them only to answer the question asked, not to speculate, or not to answer a question posed by Danny's counsel; (2) displayed impatience with a witness or defense counsel in the presence of the jury; (3) admonished a witness or defense counsel in the presence of the jury; and/or (4) stated an objection without prompting from the prosecution. In view of what the defense saw as unfair and biased treatment from the court, the defendants moved for a mistrial on at least three occasions over the course of the trial.

Finally, in its instructions, the district court charged the jury as to the essential elements for each offense. In connection with Counts I and IV of the indictment, it instructed the jury on the sections of the Tennessee statutes relevant to the predicate state gambling offenses under 18 U.S.C. §§ 1952 and 1955. It provided a general unanimity instruction to the jury, but did not instruct the jury that the verdict must be unanimous as to all the conduct supporting the guilty verdict.

## II. ISSUES RAISED

### A. Evidentiary Problems

Appellants Danny and Blake claim that the district court improperly admitted evidence of the Howard beating incident and of Danny's different treatment of white and black customers and employees. They specifically claim that the potential prejudice resulting from the admission of this evidence—particularly the admission of evidence of racist policies to a predominantly black jury—far outweighed the probative value of that evidence.

■ This court reviews admissibility issues for abuse of discretion. *United States v. Sassanelli,* 118 F.3d 495, 498 (6th Cir. 1997). "Under this standard of review, this court takes a maximal view of the probative effect of the evidence and a minimal view of its unfairly prejudicial effect, and will hold that the district court erred only if the latter outweighs the former." *Id.*

■ From this perspective, the Owenses' argument is unavailing. With respect to the Howard beating incident, the evidence of violence is relevant to the conspiracy charge in the indictment, which specifically alleged that "[i]n late May or Early [sic] June, 1991, . . . [Danny and Blake] participated in the beating of an individual accused of stealing from [Danny's] electronic gambling devices." The admission of the evidence thus easily satisfies FED.R.EVID. 402. As to the claim that the potential prejudice outweighs the probative value of the evidence, courts routinely admit evidence similar to that admitted here in conspiracy cases in order to prove the patterns and practices of the conspiracy. *See United States v. Wilson,* 11 F.3d 346, 353 (2d Cir.1993). Thus, there is little or no support for the Owenses' claim that the district court abused its discretion in failing to find the evidence about the Howard beating to be overly prejudicial.

■ As to Danny's objection to the admission of evidence of racist policies, this argument also fails. His contention hinges largely on the decision in *Old Chief v. United States,* 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997), which held that a court cannot admit evidence of prior crimes in order to satisfy an element of a felon in possession of a firearm charge where the defendant stipulates to the prior felony conviction. He argues that because he was willing to stipulate to the bias of a witness, Marsha Schaffer, the government could not seek to introduce evidence of that witness's bias against Danny that she developed as a result of a racial incident. However, as the Court noted in *Old Chief,* a mere offer of stipulation to an element of an offense or certain evidence does not render those matters irrelevant and, hence, inadmissible. *Id.* at 650. Rather, subject to the limited excep-

tion of felony-convict status, the Court reaffirmed "the accepted rule that the prosecution is entitled to prove its case free from any defendant's option to stipulate the evidence away." *Id.* at 654.

Thus, *Old Chief* leaves Danny to challenge the admission of the racial evidence strictly on the basis of its probative value versus its potential for prejudice. The district court determined that the evidence was relevant to the bias issue and to the control Danny exercised over the illegal activities charged and that the potential for prejudice arising out of admission of such evidence was outweighed by the probative value of the evidence. Danny has failed to show how this determination is an abuse of discretion.

### B. Constitutionality of Statutes

Woodfin argues that under *United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), 18 U.S.C. §§ 1955 and 1956, the gambling and money laundering statutes, exceed Congress's authority to legislate pursuant to the Commerce Clause, U.S. CONST. art. I, § 8, cl. 3. He specifically claims that in the absence of a substantial effect on interstate commerce, Congress cannot seek to regulate an area of criminal enterprise.

The *Lopez* decision struck down 18 U.S.C. § 922(q)—the federal law prohibiting firearm possession on or near school grounds—on the grounds that such a law fell outside of Congress's commerce power. In so holding, the Court set forth certain criteria to determine the propriety of a federal criminal statute under the Commerce Clause.

■ As to the challenge to § 1955, this court has upheld that law in the face of a *Lopez* challenge. *United States v. Wall,* 92 F.3d 1444 (6th Cir.1996). The defendants' challenge to § 1956 is equally unavailing. Although the Sixth Circuit has never had occasion to address an attack on the money laundering statute under *Lopez,* other circuits have found the statute constitutional as a proper exercise of the commerce power. *See United States v. Westbrook,* 119 F.3d 1176, 1191–92 (5th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1060, 140 L.Ed.2d 121 (1998); *United States v. Leslie,* 103 F.3d 1093, 1100 (2d Cir.1997), *cert. denied,* —— U.S. ——, 117 S.Ct. 1713, 137 L.Ed.2d 837 (1997); *United States v. Griffith,* 85 F.3d 284, 286–288 (7th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 272, 136 L.Ed.2d 195 (1996); *United States v. Baker,* 82 F.3d 273, 275–276 (8th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 538, 136 L.Ed.2d 423 (1996); *United States v. Grey,* 56 F.3d 1219, 1223–25 (10th Cir.1995) (but reversing conviction on grounds that § 1956 was improperly applied to the defendant). Perhaps the most pertinent lesson of these decisions—at least for present purposes—is that the use of federally insured banks and/or the transport of monies across state borders to facilitate the money laundering create a sufficient nexus to interstate commerce to allow application of § 1956. *Griffith,* 85 F.3d at 287–288; *Baker,* 82 F.3d at 275–276. This connection alone is enough to place § 1956 into *Lopez*'s second category, *i.e.,* into the range of statutes governing "the instrumentalities of interstate commerce . . . even though the threat may come only from intrastate activities." *Id.* at 275 (citing *Lopez,* 115 S.Ct. at 1629–30). Where a statute regulates the "instrumentalities of interstate commerce," the law need not address conduct having a substantial effect on interstate commerce in order to survive a constitutional challenge. Rather, the mere character of the activities covered under the statute make them properly the subject of federal regulation. *Lopez,* 115 S.Ct. at 1629.

Here, the monies derived from the illegal activities not only were deposited in a federally insured bank, but were transported from Tennessee to Mississippi for deposit. Accordingly, § 1956 can permissibly apply simply by virtue of the nature of the transactions in which the defendants engaged in their efforts to conceal their illegal activities.

### C. Evidence for the Defense

■ Woodfin argues that the court erred by refusing to allow the defendants to introduce evidence or to question witnesses about the role of Cooper and DiScenza in the investigation of Danny's operation. This court reviews such trial court limitations on the

scope of defense inquiry for abuse of discretion. *United States v. Burge,* 990 F.2d 244, 249 (6th Cir.1992).

■ Woodfin's claim is meritless. Regardless of whether the district court characterized the attempt to question witnesses about any Cooper/DiScenza connection as part of an "outrageous government conduct defense" under *United States v. Payne,* 962 F.2d 1228, 1232 (6th Cir.1992), the court did not abuse its discretion by allowing questioning only as to possible improper influence either Cooper or DiScenza may have exercised over government witnesses. Here, the trial court sought to prevent the jury from drawing unwarranted conclusions based simply on the fact that either Cooper or DiScenza—neither of whom testified at trial—had an interest in Danny's conviction. Much as in *Burge,* it is difficult to see how the excluded testimony, "which may have reflected on the testimony of [Cooper or DiScenza], would have helped to establish a reasonable doubt as to whether the defendant[s] committed the crimes charged." *Burge,* 990 F.2d at 248.

■ Woodfin further contends that the district court should have permitted the defendants to introduce evidence of an industry-wide custom of imposing fines in order to deter—not to profit from—prostitution. The district court ruled that the industry practice was irrelevant to the conduct of Danny's clubs. This court reviews such trial court limitations on the scope of defense inquiry for abuse of discretion. *Burge,* 990 F.2d at 249.

Woodfin's argument fails. The court weighed the potential for confusion and misdirection against the probative value of the proffered evidence and determined that it was irrelevant. What is more, in light of the defendants' introduction of other evidence showing that the fines were for the purpose of deterring prostitution and absenteeism, they had an opportunity to develop this defense. The district court thus did not abuse its discretion in excluding the evidence with respect to the competitors' use of fines.

## D. Judicial Bias

■ Danny claims that the judge's conduct deprived the proceedings of the appearance of impartiality and thereby destroyed the defendants' chance for a fair trial. Defendants preserved some of their objections to the court's conduct, but failed to preserve other parts. If the objection was properly preserved, then we review for harmless error. If not properly preserved, this court reviews charges of judicial bias for plain error. *See United States v. Segines,* 17 F.3d 847, 851–52 (6th Cir.1994).

■ Although the trial judge here was at times harsh in his treatment of defense counsel, if his conduct was erroneous, it was harmless. His actions do not rise to the level of bias exhibited by the trial judges in the cases in which this court has found plain error as a result of bias. *See id.; United States v. Hickman,* 592 F.2d 931 (6th Cir. 1979). Rather, the transcripts evoke an image of a judge weary of a lengthy trial and looking to save time, not that of a judge favoring one side over another.

Moreover, applying the three considerations *Hickman* prescribes to this case, there is no plain error. *Hickman* suggests that a reviewing court examine (1) "the nature of the issues at trial," (2) "the conduct of counsel," and (3) "the conduct of witnesses." *Hickman,* 592 F.2d at 933. Here, in contrast to *Hickman,* the trial involved a complex, multi-object conspiracy and collateral issues of state law tried to a jury over the course of months. Further, defense counsel was prone to revisiting issues the court had previously settled. Finally, many of the defense witnesses had difficulty confining their answers to the questions asked. In view of these three factors, a certain degree of frustration on the part of the trial court is understandable. Therefore, Danny's bias argument fails.

## E. Instructions

Bennett claims that the district court failed adequately to advise the jury of the elements of the predicate state offenses for the counts alleging violations of 18 U.S.C. §§ 1952 and 1955. She contends that the district court erred when it did not inform the jury of any

aspect of TENN.CODE ANN. § 39–13–515 concerning "prostitution promotion" and in failing to inform the jury of the "elements" of the state gambling and prostitution offenses—as opposed to the definitions of those offenses—relevant to the federal offenses. She further posits that the district court should have provided the jury with a "specific" unanimity instruction, rather than the general unanimity instruction the court included in its charge to the jury. Because the defendants failed to raise either of these arguments below, this court will review the instructions only for plain error. *United States v. Sanderson,* 966 F.2d 184, 187 (6th Cir.1992).

▉ Bennett's first argument is meritless. As to her claim that the district court was required to instruct the jury on TENN. CODE ANN. § 39–13–515, the indictment makes no mention of that law as a predicate offense to the defendants' 18 U.S.C. § 1952 liability. Presumably, Bennett's confusion in this regard stems from the charge in Count I alleging that the co-conspirators acted "with the intent to promote the carrying on of a prostitution business. . . ." It appears that Bennett has seized upon this language to argue that the promotion offense derives from state law. However, 18 U.S.C. § 1952(a)(3)(A) provides an independent basis for criminal sanctions for promoting any act illegal in the state in which it is committed. Thus, it was sufficient for the court to instruct on prostitution generally in Tennessee and the elements of § 1952.

With regard to Bennett's claim that the court should have instructed the jury as to the "elements" of the state gambling and prostitution offenses, Bennett fails to identify how the description of the state crimes the district court read to the jury was inadequate or erroneous. The sole support Bennett provides for her argument is *United States v. Jones,* 909 F.2d 533, 538 (D.C.Cir.1990), in which the trial court read the definitions of the predicate state offenses, but then effectively instructed the jury that those definitions were not binding on the jury's determination. Here, by contrast, the district court did not so modify the state law definitions. In light of Bennett's failure to distinguish

between the definitions of the state crimes the court read to the jury and her vague conception of the elements of the offenses, the district court did not abuse its discretion, much less commit plain error. *See United States v. McNeal,* 77 F.3d 938, 944–945 (7th Cir.1996) (court's exclusive reliance on definition of crime contained in statute to instruct jury was appropriate).

Bennett's unanimity instruction argument is also without merit. As this court noted: "[o]rdinarily it is not necessary to give specific unanimity instructions unless (1) a count is extremely complex, (2) there is variance between the indictment and the proof at trial, or (3) there is a tangible risk of jury confusion." *Sanderson,* 966 F.2d at 187.

▉ The district court did not plainly err in its failure to provide a specific unanimity instruction on the counts to which Bennett refers here. Contrary to Bennett's assertion, Count I did not allege nine separate target offenses, but rather only four such offenses. Likewise, Count IV, the other count under which the jury found Bennett guilty, charged only one offense, albeit with four possible predicate state crimes. To this extent, the counts under which Bennett was convicted are not quite as complex as she would have the court believe.

▉ Moreover, common sense and principles of fundamental fairness militate against reversal on the issue of the specific unanimity instruction. Bennett does not claim that the alleged error affected the outcome of the trial, nor does she claim that the error was prejudicial to her in any other way. Therefore, she cannot show plain error. *United States v. Olano,* 507 U.S. 725, 734–735, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Furthermore, it is undisputed that the predicate state offenses were present in this case, thus leaving the jury only to determine whether the prosecution had established the remaining elements of the federal offenses.

### F. Sentencing

Blake contends that the district court improperly assessed a two-level enhancement because the Howard beating incident involved the "forcible restraint of the victim

such as by being tied, bound, or locked up" under USSG §§ 3A1.3 and 1B1.1(i). This argument is unavailing. Only by reply brief did Blake attempt to provide any support for his claim that the restraint involved in the Howard episode was too minimal to merit the forcible restraint enhancement. Even then, he cites only decisions with no application to the instant case. There was no error by the district court in assessing this enhancement.

 Danny next assigns as error the district court's inclusion of monies potentially derived from legitimate business activities in the calculation of the amount of funds laundered. He argues that the court could not consider money earned from legal enterprises regardless of whether he had commingled those funds and that the court arrived at its $1,097,800 figure without any facts supporting a finding that such funds were actually laundered or commingled.

 This court reviews a sentencing court's application of the Guidelines to a particular set of facts for clear error, and reviews legal conclusions with respect to the Guidelines de novo. *United States v. Smith*, 39 F.3d 119, 122 (6th Cir.1994). This sentencing argument fails. First, this court held in *United States v. Bencs*, 28 F.3d 555, 562 (6th Cir.1994), that where a defendant charged with money laundering in violation of 18 U.S.C. § 1956(a) commingles laundered money with funds derived from unspecified other sources, all such funds are attributable to the money laundering scheme. "We refuse to read [18 U.S.C. § 1956] in a manner that would reward the more creative money-launderer by allowing him to escape liability altogether by commingling assets or otherwise disguising the source of his funds." *Id.* Although *Bencs* was a § 1956 case while Danny raises a sentencing challenge, the district court here could consider all the funds commingled with proceeds of the illicit enterprises.

Second, the district court did not clearly err in finding that Danny had commingled funds. There is sufficient evidence in the record to support such a finding. For instance, the court could reasonably conclude that Owens commingled funds on the basis of testimony indicating that rental payments contained proceeds from prostitution and gambling, and that monies involved in the gambling scheme were commingled with money from the bar at one of the topless clubs.

Bennett further challenges the procedure whereby the district court concluded that she was subject to punishment for the money laundering allegations contained in Count I. She specifically claims that USSG § 1B1.2(d) unconstitutionally allows a judge to usurp a fact-finding function properly left to the jury by permitting the judge to determine guilt as to each object in a multi-object conspiracy. The Supreme Court recently approved of limited judicial fact-finding for sentencing purposes. *See Edwards v. United States,* — U.S. —, — – —, 118 S.Ct. 1475, 1477–78, 140 L.Ed.2d 703 (1998). Thus, Bennett's sentencing argument fails.

Finally, Blake raises for the first time in his reply brief a challenge to the district court's imposition of a term of imprisonment to run consecutively to a 15–year term for kidnaping he received as a result of a separate prosecution. He claims that the court did not follow the process prescribed in the Guidelines for reaching this determination.

 This court reviews a sentencing court's application of the Guidelines to a particular set of facts for clear error, and reviews legal conclusions with respect to the Guidelines de novo. *Smith,* 39 F.3d at 122. However, this court does not customarily address matters raised only in a reply brief. *United States v. Perkins,* 994 F.2d 1184, 1191 (6th Cir.1993).

 Nevertheless, even were this court to consider Blake's claim, he would not be entitled to be resentenced. Under USSG § 5G1.3(c), a court may, in its discretion, decide to impose a consecutive sentence in order to achieve a reasonable incremental punishment for the instant offense. Contrary to Blake's argument, although the Guidelines provide a detailed outline of factors for the sentencing court to consider in its decision, "[t]his is not to say ... that the district court is required either to (1) use the commentary methodology or else (2) invoke a

departure from the Guidelines." *United States v. Covert*, 117 F.3d 940, 945 (6th Cir. 1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 204, 139 L.Ed.2d 140 (1997). Where, as here, the court makes generally clear the rationale under which it has imposed the consecutive sentence and seeks to ensure an appropriate incremental penalty for the instant offense, it does not abuse its discretion. *See Covert*, 117 F.3d at 946 (affirming consecutive sentence where sentencing court implicitly rejected Guidelines methodology).

**AFFIRMED.**