**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Willie James ALLGOOD, Defendant–Appellant.**

No. 00–5727.

United States Court of Appeals,
Sixth Circuit.

Aug. 29, 2002.

Before MARTIN, Chief Circuit Judge, and CLAY, and GARWOOD, Circuit Judges.*

GARWOOD, Circuit Judge.

Defendant–Appellant Willie James Allgood appeals his 18 U.S.C. § 922(g)(1) conviction and sentence. He raises challenges to the district court's denial of his motion to suppress and to the sufficiency of the evidence relied on during the sentencing phase. We affirm.

Willie James Allgood ("Allgood") was convicted of one count of conspiracy to distribute cocaine base, three counts of possessing cocaine base with intent to distribute, one count of possession of cocaine base, and one count of being a felon in possession of a firearm. We hold that the evidence supports his convictions and that it was not plain error for the district court to omit a jury instruction regarding accomplice testimony. We also hold that the overwhelming evidence reflects that the conspiracy involved more than five grams of cocaine base, and thus Allgood's failure to object below on the ground that no quantity of cocaine was stated in the indictment or submitted to the jury does not require resentencing pursuant to *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Accordingly, we affirm.

## BACKGROUND

On May 26, 1998, officers with the Tullahoma, Tennessee police department provided the Franklin County Sheriff's Department with information indicating that Allgood was storing contraband at his Winchester, Tennessee home. This information suggested the presence of both stolen firearms and cocaine base (hereinafter called by its more common name, "crack cocaine"). Acting on this information, police officers searched the home five times in 1998 and 1999, each time pursuant to a warrant. The sheriff's department conducted the first search of Allgood's home on May 26, 1998. Officers discovered a Bearcat digital scanner capable of listening in on police radio channels; the scanner was on and tuned to the police wavelengths, which may explain why the house appeared to have been recently and hastily abandoned. A locked safe contained .2 grams of crack cocaine, $9,492.85 in currency and some jewelry. Elsewhere in the house, the officers discovered another $2,885 in currency[1] and $492 in food

* The Honorable William L. Garwood, United States Circuit Judge for the Fifth Circuit, sitting by designation.

1. An undetermined amount of this currency was secreted in a hidden compartment in a television stand. The compartment was only

stamps. The officers also found digital scales, a .22 caliber rifle, and between fifty and seventy-five items of property that were later returned to a Wal–Mart store.

Sheriffs searched Allgood's home again on October 29, 1998, this time maintaining radio silence. They found 17.1 grams of cocaine base in the carport, wrapped in black plastic that had been burned and twisted. They also found over $12,000 in currency, approximately $800 in food stamps, jewelry, digital scales, two scanners (one of which was tuned to the police frequency), glass pipes for crack cocaine smoking, and 9.1 grams of marihuana. On November 5, 1998, the sheriff's department discovered 25.3 grams of crack cocaine, 25.1 grams of powder cocaine, 33.1 grams of marihuana, drug paraphernalia, and $2,747 in currency. As with the prior search, the crack cocaine was found in the backyard, sealed in a black garbage bag whose ends were twisted and burned. On April 19, 1999, the Winchester Police Department searched Allgood's home and found 2.3 grams of crack cocaine on the patio and in the yard, six grams of marihuana, $716 in currency, glass pipes, and jewelry. Finally, a July 15, 1999, search by the sheriff's department uncovered twisted black garbage bags, glass pipes, and $3,110 in currency.

Allgood was arrested on August 18, 1999 and charged in a second superseding indictment on February 9, 2000. The indictment charged him with conspiracy to distribute cocaine base, four counts of possession of cocaine base with intent to distribute, and being a felon in possession of a firearm. The indictment did not allege drug quantity. At trial on February 15, 2000, the prosecution introduced the above physical evidence and called as witnesses the officers in charge of conducting these searches.

The prosecution also introduced testimony from several people who had been involved with Allgood in the sale or purchase of crack cocaine. Kenneth Eady testified that he had purchased crack cocaine from Allgood on over one hundred occasions and had seen Allgood make, sell and use it. Eady admitted he had "technically" sold drugs because he acted as an intermediary who would take money from buyers and then deliver drugs to them. Eady took advantage of this position to break off small pieces of crack cocaine for himself before delivering it, and would "usually" receive more crack cocaine from Allgood as payment for making the deal. Eady testified that he had helped Allgood bury drugs in the back yard, and had helped dig them up as well. According to Eady, the police missed a quarter-ounce (or seven grams) of crack cocaine during their April 19, 1999, search because he and Allgood had just buried it. He also testified that two others had helped Allgood distribute drugs: George Burnette would buy drugs and resell them elsewhere with Allgood's knowledge, while Mike Farris would sometimes take over drug sales for Allgood when he had to leave the house. Finally, Eady testified as to the significance of various pieces of drug paraphernalia found in the house, including how glass pipes were used for smoking crack cocaine. He also testified that black garbage bags were used to wrap the crack cocaine, after which the ends were twisted and burned. Eady had prior felony convictions and testified in return for a promise that a DEA agent would make a call on his behalf to a state prosecutor. Eric Cody also testified for the prosecution; he is a drug user with multiple convictions for burglary who testified that he had purchased crack cocaine from Allgood in the past, sometimes pay-

revealed when an officer accidentally struck it       while attempting to open the safe.

ing with stolen merchandise. Cody testified that Allgood "always" wanted guns in particular and would trade drugs for them. According to Cody, Allgood used as many as ten others as intermediaries to negotiate his drug deals for him, although on one occasion Allgood inspected several guns himself before sending out an associate to make a trade.

The prosecution also called Enid Presley, who also had obtained drugs from Allgood on more than 100 occasions, "many" times buying directly from Allgood. Ms. Presley admitted that she had smoked crack cocaine two days before testifying. Another witness, Crystal Clark, admitted that she was a habitual user of crack cocaine and testified that she had purchased crack cocaine from intermediaries at Allgood's house. She twice saw Allgood hand the crack cocaine to an intermediary. Clark also testified that she had purchased crack with jewelry in the past. Another habitual user, Jennifer Beasley, testified that she had purchased crack cocaine at Allgood's house on several occasions and would sometimes pawn jewelry there for that purpose. Beasley testified that she had bought crack cocaine personally from Allgood between fifty and seventy-five times, and other times from the other conspirators. Finally, DEA Agent Bob Chester testified as a narcotics expert, explaining the purpose of the drug paraphernalia and quantities of drugs. He also explained where drug dealers hide their drugs and how they mask them. Chester admitted that the prosecution had no direct evidence that Allgood sold crack cocaine, such as videotape or a "controlled buy."

The defense also called witnesses. Barbara Dodson, Allgood's sister, explained that she had received a large personal injury settlement and had the cash proceeds of that settlement in safekeeping with the defendant. Another sister, Brenda Reed, explained that she owned the house and paid the utilities. Reed testified that the yard of the house was extremely unkempt and that people often wandered through it. The defense also presented evidence that the neighborhood was a high-traffic area for drugs and that sometimes drug users and drug dealers would discard their drugs when pursued by police, possibly explaining the presence of the drugs on the property.

Allgood was found guilty on five of the counts as charged; on the second count, relating to possession of .2 grams of drugs with intent to distribute on May 26, 1998, the jury found him guilty of the lesser included offense of simple possession. In accordance with the practice at the time, the jury, without objection from Allgood, was not asked to make any finding respecting the quantity of drugs involved. At the sentencing hearing on May 22, 2000, the judge considered the testimony and determined that Allgood had sold in excess of 50 grams of crack cocaine during the conspiracy, placing his offense within the sentencing range of ten years to life imprisonment under 21 U.S.C. § 841(b)(1)(A)(iii). Allgood also had two prior convictions for drug felonies, and thus 21 U.S.C. § 841(b) mandated a life sentence. Accordingly, Allgood was sentenced to life imprisonment for the conspiracy count, 360 months each on the possession with intent to distribute counts, 120 months on the firearm count, and 36 months and a $5,000 fine for the simple possession count. Neither at sentencing nor at any other time did Allgood raise before the district court any question concerning the failure of the indictment to allege any quantity of cocaine (or cocaine base) or to such quantity being determined by the district court at sentencing rather than by the jury. Allgood timely appealed. One month later, the Supreme Court

handed down *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). After this case was submitted, the Supreme Court handed down *United States v. Cotton*, —— U.S. ——, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002).

## DISCUSSION

I. The Evidence Supports Allgood's Conviction

Allgood first argues that the trial court should have granted his motion for a new trial because the evidence against him was insufficient to support his convictions for conspiracy to distribute cocaine base and possession of cocaine base with intent to distribute. Allgood similarly challenges the evidence supporting his conviction under the sufficiency of the evidence standard normally applicable to a motion for judgment of acquittal, possibly because his motion for a new trial was founded in part on the allegation that his motion for judgment of acquittal should have been granted. Allgood does not adequately distinguish between these different standards. In reviewing the denial of a motion for new trial, this court examines the evidence introduced at trial to determine whether the district court clearly and manifestly abused its discretion by determining that the evidence did not preponderate heavily against the verdict. *United States v. Ashworth*, 836 F.2d 260, 266 (6th Cir.1988). In contrast, the narrower standard for sufficiency of the evidence is to draw all reasonable inferences and all credibility determinations in the light most favorable to the prosecution and in support of the verdict, and then consider whether any rational trier of fact could have found the essential elements of the crime beyond any reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Lee*, 991 F.2d 343, 347 (6th Cir.1993). Though

Allgood's precise point on appeal is obscure, the evidence against him withstands a challenge under both standards.

Allgood claims that no evidence connects him to the drugs found on his property. We disagree. First, Kenneth Eady testified that Allgood made a practice of hiding his drugs in the backyard of his house and that he had helped Allgood bury and dig up those drugs in the past. Agent Bob Chester also testified that drug dealers often hid their drugs in their houses and yards. Second, the prosecution provided testimony from several witnesses who had personally purchased drugs from Allgood in the past, including Kenneth Eady, Jennifer Beasley and Enid Presley. Third, Allgood's house was littered with drug paraphernalia, such as glass pipes, twisted and burned black plastic bags, digital scales, and large quantities of cash. Taking all this evidence in the light most favorable to the verdict, we find a rational trier of fact could find that Allgood possessed the drugs with intent to distribute them. We also hold that the trial court did not commit a clear and manifest abuse of discretion by holding that the evidence did not preponderate heavily against the verdict.

Allgood next claims that the testimony of Kenneth Eady was insufficient to establish a conspiracy to sell cocaine base, and that the relationship would be better characterized as that of buyer and seller. Allgood claims that Eady acted as an intermediary without any approval from Allgood, doing so merely for the opportunity to steal part of the crack cocaine for himself. His claims are belied, however, by Eady's testimony that Allgood "usually" paid him a small rock of crack cocaine for making a deal. Eady also assisted Allgood in hiding and retrieving the crack cocaine from the backyard. His involvement exceeded that of a seller; Eady was clearly

involved deeply enough to be considered a co-conspirator. Moreover, the conspiracy was not limited to Allgood and Eady. Five witnesses—Kenneth Eady, Eric Cody, Crystal Clark, Enid Presley and Jennifer Beasley—all testified that they had purchased crack cocaine from Allgood through an intermediary that he employed. Clark specifically testified that she had twice seen Allgood working with an intermediary to complete the deal. As above, when we take this evidence in the light most favorable to the verdict, we find that a rational trier of fact could find that Allgood was part of a conspiracy to distribute cocaine base. Similarly, the trial court did not abuse its discretion by holding that the evidence did not preponderate heavily against the verdict.

■ We therefore affirm the district court on both of Allgood's challenges to the sufficiency of the evidence supporting his conviction, regardless of whether Allgood intended to couch those challenges in a motion for a new trial or a motion for judgment of acquittal.

## II. The District Court Did Not Plainly Err In The Jury Charge

Allgood next contends that the trial court should have specifically instructed the jury to consider Eady's testimony with caution because it was the uncorroborated testimony of an accomplice. Because Allgood did not object at trial or request such an instruction, we review the trial court's instructions for plain error. *United States v. Sanderson*, 966 F.2d 184, 187 (6th Cir. 1992). "We consider whether the instructions, when taken as a whole, were so clearly wrong as to produce a grave miscarriage of justice. An omitted or incomplete instruction is even less likely to justify reversal, since such an instruction is not as prejudicial as a misstatement of the

law." *Id.* (citations and quotations omitted).

This court has held that "a conviction may be valid if supported only by accomplice testimony which a properly cautioned jury accepted as proof beyond reasonable doubt." *United States v. McCallie*, 554 F.2d 770, 772 (6th Cir.1977). While it is the preferred practice to give a cautionary instruction regarding the possible unreliability of accomplice testimony, we have not held that such an instruction is required for a jury to be "properly cautioned." On the contrary, we have rejected an appeal similar to the one at bar. In *United States v. Carr*, 5 F.3d 986 (6th Cir.1993), defendant Carr argued that the jury should have been cautioned that the credibility of certain witnesses was inherently questionable due to the fact that they had pleaded guilty to related offenses. *Id.* at 992. The trial judge in *Carr* had generally instructed the jury to consider the motives of the witnesses and had told them that conviction of a crime was a reason to discredit or impeach that witness's testimony, but had refused Carr's requested instruction. *Id.* We held that these instructions covered "substantially" the same material as the instruction requested by the defendant, and thus the refusal to give the instruction was not reversible error.

■ The instructions given in *Carr* are similar to the instructions given in this case, although Allgood has an even more difficult task on appeal because he failed to preserve error by requesting an instruction or objecting at trial. Moreover, under plain error review an omitted instruction is even less likely to justify reversal than a misstatement. *See Sanderson*, 966 F.2d at 187. Allgood has failed to carry this burden because the jury was adequately instructed. The district court specifically cautioned the jury to consider the biases and motives of the witnesses and instruct-

ed them that conviction of a felony is a valid reason to discredit the testimony of a witness. These instructions covered substantially the same concepts as the instruction Allgood now proposes. Eady was thoroughly cross-examined, so his checkered past and involvement in Allgood's drug dealing were made clear to the jury. It was not "a grave miscarriage of justice" for the trial court to omit a specific, unrequested instruction on uncorroborated accomplice testimony and we therefore affirm the district court on this point of error.

### III. Allgood's Sentence Should Remain Despite *Apprendi* Error

Allgood was sentenced one month before the Supreme Court handed down *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), in which the Supreme Court held that any fact (other than the fact of prior conviction) that increases the penalty for a crime beyond the statutory maximum must be submitted to the jury and proven beyond a reasonable doubt. *Id.* at 2355. Yet, in accordance with the usual pre-*Apprendi* practice, the indictment did not allege drug quantity and the jury was not asked to make any determination respecting the quantity of drugs involved in the conspiracy to distribute crack cocaine. Instead, the district court considered the evidence and found by a preponderance of the evidence that the conspiracy concerned over fifty grams of crack cocaine. Allgood argues that these failures render his conviction constitutionally infirm and demand reversal.

Because he raised no objection in the district court, this court reviews the instructional deficiency for plain error. *United States v. Page*, 232 F.3d 536, 543–45 (6th Cir.2000).

■ This Court has already rejected Allgood's proposed remedy as to the in-

structional deficiency. The entire conviction is not tainted by such a failure; rather, the proper remedy for a sentence in excess of the proper statutory limits is to remand to the district court for resentencing. *Page*, 232 F.3d at 543–45. Where the sentence already lies within the statutory limits for the quantity of drugs actually proven, the sentence will be affirmed without the need for remand. *United States v. Garcia*, 252 F.3d 838, 842–43 (6th Cir.2001). Thus, we reject Allgood's contention that his conviction must be overturned because of the failure to meet the requirements of *Apprendi.*

Allgood likewise argues that the failure of the indictment to allege drug quantity renders his sentence invalid. Again, however, no complaint in this respect was raised in the district court.

■ We hold that Allgood is not entitled to reversal of his sentence or remand for resentencing, even though the United States conceded this point in its brief. Since the time this case was submitted, the Supreme Court handed down *United States v. Cotton*, —— U.S. ——, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002). In *Cotton,* the defendants were charged with conspiracy to distribute cocaine and cocaine base, but the superseding indictment failed to allege any of the threshold levels of drug quantity leading to enhanced penalties under 21 U.S.C. § 841(b). *Id.* at 1783. Also, the issue of quantity was not presented to the jury, and was decided instead by the trial court at sentencing. *Id.* at 1784. The defendants did not object to this practice. *Id.* Reviewing this *Apprendi* error under a plain error standard of review, the Fourth Circuit held that the omission of the drug quantities from the indictment was a "jurisdictional" failure requiring the vacation of the appellants' sentences. *Id.*

The Supreme Court reversed. The Court first held that defects in an indictment such as the omission of drug quantities do not deprive the district court of jurisdiction. *Id.* at 1784–85. The Court then proceeded to apply the four-part plain error standard of review, which asks (1) if there was error, (2) that was plain, (3) and that affected substantial rights. If all three conditions are met, the court has the discretion to notice a forfeited error, but only if (4) "the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 1785 (quoting *Johnson v. United States,* 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)). The *Cotton* Court accepted the government's concession that the failure was an "error" that was "plain." Yet, the Court declined to decide whether the plain error "affected substantial rights" because the error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings. *Id.* at 1786. The Court reached this conclusion because the evidence that the conspiracy involved more than 50 grams of cocaine base was "overwhelming" and "essentially uncontroverted." *Id.* In *Cotton,* the evidence included seizures of 431.3 grams of cocaine base and witness testimony regarding another 1.25 kilograms of cocaine base. Under these circumstances, the Court noted, "[s]urely the grand jury, having found that the conspiracy existed, would have also found that the conspiracy involved at least 50 grams of cocaine base." *Id.*

We have already had occasion to apply *Cotton.* In *United States v. Harris,* 293 F.3d 970 (6th Cir.2002), the defendant was convicted of knowingly and intentionally distributing cocaine base and possession of a firearm by a convicted felon. The *Harris* jury had not been asked to determine the quantity of drugs, yet the district court apparently used a quantity in determining the proper sentence without objection from the defendant.[2] Harris appealed his sentence in light of *Apprendi.* Following the recent precedent of *Cotton,* we applied the plain error standard and found that "the evidence was overwhelming that defendant possessed the minimum drug quantity to justify the sentence imposed." *Id.* at 973.

We reach the same result. Because Allgood had two prior felony convictions for drug offenses, a finding of even five grams of crack cocaine would have exposed him to a statutory range of twenty years to life imprisonment. *See* 21 U.S.C. § 841(b)(1)(B). It is not necessarily enough, however, to say that the actual sentence imposed on the appellant was within the range of possible sentences. As an additional consideration, we have held that remand is required if we find the district court felt constrained by the statutory minimums and might have imposed a different sentence if the quantity of drugs were different. *See United States v. Ramirez,* 242 F.3d 348 (6th Cir.2001); *United States v. Flowal,* 234 F.3d 932 (6th Cir. 2000); *Garcia,* 252 F.3d at 843. *See also United States v. Stafford,* 258 F.3d 465, 479 n. 9 (6th Cir.2001) (noting the limitations of this rule); *United States v. King,* 272 F.3d 366, 377 (6th Cir.2001) (same). A review of the transcript of Allgood's sentencing hearing shows the district court felt the statutes mandated a life sentence because the quantity of drugs exceeded fifty grams and the appellant had two prior convictions for felony drug offenses. *See* 21 U.S.C. § 841(b)(1)(A). Because

---

**2.** In *Harris,* the court did not name the statute under which the appellant was sentenced. The appellant's thirty year sentence may have come within 21 U.S.C. § 841(b)(1)(B), or it could also have come under 21 U.S.C. § 841(b)(1)(C) with an enhancement for his prior conviction.

*Cotton* did not address a situation where the district court had imposed a mandatory minimum sentence, we assume, *arguendo*, that the *Ramirez/Flowal* line of cases still applies to the appellant's case.[3]

We need not vacate the sentence or remand, however, because the overwhelming evidence reflects that the conspiracy to distribute crack cocaine involved more than fifty grams. First, the physical evidence nearly reached fifty grams. Police seized 44.7 grams of crack cocaine during their various searches of Allgood's home, not counting the .2 gram the jury found was not intended for distribution. Moreover, Kenneth Eady testified that the police missed seven grams (one ounce) of crack cocaine in their April 19, 1999, search because he had just helped Allgood bury it. The physical evidence plus this testimony results in an amount in excess of fifty grams.

Second, Kenneth Eady, Eric Cody, Enid Presley, Crystal Clark, and Jennifer Beasley testified to hundreds of sales of crack cocaine. Because the testimony established that the usual quantity of crack cocaine sold to a user was one-tenth of one gram, this witness testimony adds dozens of grams of crack cocaine to the quantity sold over the period of this long-lived conspiracy. Though Allgood impeached these witnesses as drug addicts and criminals, he failed to controvert their testimony regarding quantities of drugs. We therefore echo the Supreme Court's *Cotton* holding by observing that if the jury believed the witnesses' testimony *at all,* it would necessarily have arrived at a quantity of crack cocaine far in excess of fifty grams. Moreover, it is obvious from the record that the conspiracy was a long ongoing one, that the customers were not limited to those

who testified, and that its object was to distribute quantities well in excess of fifty grams.

Third, we note that the jury paid close attention to the quantity of drugs involved in each of the police seizures. The jury rejected the prosecution's contention that Allgood intended to distribute the .2 grams seized during the May 26, 1998, search and instead found the lesser included offense of simple possession. In contrast, the jury found that Allgood intended to distribute the remaining 44.7 grams that were seized. This strongly indicates that the jury decided Allgood was an occasional crack cocaine user whose main interest was running a large and enduring conspiracy to sell crack cocaine, not a crack cocaine user whose main interest was his own drug appetite and who only sold crack cocaine occasionally.

The quantity of drugs established by the overwhelming evidence greatly exceeds fifty grams, for which the statute mandates a sentence of life imprisonment. We therefore affirm the sentence imposed on the appellant.

## Conclusion

The district court did not abuse its discretion in refusing to grant a new trial, nor does the evidence fail to support the jury's verdict. Moreover, the district court did not plainly err by failing to instruct the jury about the dangers of uncorroborated accomplice testimony. Finally, the overwhelming evidence reflects that the conspiracy involved more than fifty grams of crack cocaine, and thus under *Cotton* and our decision in *Harris* the absence of any challenge below either to the indictment's failure to allege drug quantity or to the

---

**3.** The Supreme Court also recently handed down *Harris v. United States,* — U.S. ——, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002), but after review we do not conclude that this circuit's precedent in this particular respect would be changed by that holding.

failure to submit drug quantity to the jury as required by *Apprendi* does not require our vacation of the sentence or remand for resentencing. Allgood's conviction and sentence are therefore AFFIRMED.