RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0207P (6th Cir.)
File Name: 02a0207p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
     *Plaintiff-Appellee,*

     *v.*

No. 00-6115

NORMAN LEE HARRIS,
     *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Kentucky at Covington.
No. 97-00106—William O. Bertelsman, District Judge.

Argued: May 2, 2002

Decided and Filed: June 12, 2002

Before: MERRITT, SUHRHEINRICH, and GILMAN,
Circuit Judges.

———————————

**COUNSEL**

**ARGUED:** Kevin M. Schad, SCHAD & COOK, Indian Springs, Ohio, for Appellant. James E. Arehart, ASSISTANT UNITED STATES ATTORNEY, Lexington, Kentucky, for Appellee. **ON BRIEF:** Kevin M. Schad, SCHAD & COOK, Indian Springs, Ohio, for Appellant. Wende Morris Cross, ASSISTANT UNITED STATES ATTORNEY, Cincinnati,

1

Ohio, Charles P. Wisdom, Jr., ASSISTANT UNITED STATES ATTORNEY, Lexington, Kentucky, for Appellee.

———————————

**OPINION**

———————————

MERRITT, Circuit Judge.  Defendant Norman Lee Harris appeals his convictions for crack cocaine distribution in violation of 21 U.S.C. § 841(a)(1) and possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922 (g). Harris argues that his sentence violates *United States v. Apprendi*, 530 U.S. 466 (2000), that there was not sufficient evidence for the jury to convict him of either charge and that the district court made several procedural errors necessitating a new trial.  For the reasons that follow, we affirm the jury verdicts and the sentences imposed.

### 1.  Facts

In 1996, police officers in Maysville, Kentucky, received information that the defendant was involved in drug trafficking.  On December 2, 1996, Maysville police officer Christopher Neal learned that the defendant was staying in room 104 of the Best Western Hotel in Maysville and was dealing in drugs there.  At that time, Officer Neal performed a background check on the defendant, discovered that the defendant's driving privileges had been suspended indefinitely, and obtained a description of the defendant's vehicle and Ohio temporary license plate number.

The police set up surveillance at the hotel and saw the defendant arrive with Norma Faye Washington, who had a reputation as a cocaine dealer, and enter room 104.  Soon after, Chris Baker and Ernesto Delaney arrived in a blue 1984 Datsun and entered room 104.  After a few minutes, Delaney left the room, retrieved a black plastic box from the trunk of the car, and returned to the room.  Later, Delaney and Baker left the room with the box.  The officers then stopped Delaney's car because it had expired tags.  The officers

smelled a strong odor of marijuana emitting from the car and after finding marijuana in the car, arrested Delaney and Baker for possession of marijuana. In a search of Delaney's car pursuant to the arrest, the officers found a quantity of crack cocaine more consistent with an intent to distribute than for personal use, and later found a .38 caliber Smith & Wesson revolver in a black plastic box in the trunk.

The officers then received word that the defendant and Washington were leaving the hotel room. When the defendant passed Officer Neal on the highway, the officer stopped and arrested him for operating a car with a suspended driver's license. The defendant did not have cocaine in his possession, but did have a large amount of cash. When Washington exited the police car at the police station, she dropped a quantity of crack cocaine on the seat. She stated that she had received the cocaine that evening from the defendant while riding in his car.

At trial, Delaney, Baker, and Washington testified against the defendant. Baker stated that on the evening of December 2, 1996, the defendant agreed to sell both Baker and Washington an ounce of crack cocaine. According to his testimony, Baker gave the defendant $700 for an ounce of crack cocaine while in the hotel room. In addition, Baker testified that he had sold crack cocaine for approximately one month in 1996, and that the defendant was his only supplier.

Washington confirmed Baker's testimony. She testified that Delaney and Baker purchased crack cocaine from the defendant in the hotel room and that they brought his gun to the room that night. She observed the defendant go to the sink in the hotel room, get the crack cocaine, and give it to Baker. In addition, she claimed that, while in the car, the defendant gave her the cocaine (and told her to hide it in her sleeve) that the police found when they arrested her.

Baker, Delaney, and Washington also presented testimony at trial concerning the black plastic box that the police found in the trunk of Delaney's car. Delaney stated that the defendant instructed him to retrieve the gun from Shirley

Delaney's house and bring it to the hotel. When Delaney left the hotel room, he retrieved the gun from his car. Delaney testified that he opened the case, held the gun, and showed it to the defendant before putting it back in the box. This testimony contradicted his grand jury testimony that the defendant had possessed the gun in the room.

Delaney then took the gun back to his car. At trial, Delaney testified that the defendant said that the gun was not his. Before the grand jury, however, Delaney testified that the defendant wanted Delaney to keep it for him. Neither Baker nor Washington could recall whether the defendant held the gun after Delaney brought it in the room or the content of defendant's instructions to Delaney.

The jury found the defendant guilty both of knowingly and intentionally distributing crack cocaine and of possession of a firearm by a convicted felon. Applying the defendant's prior conviction as a sentence-enhancing factor, the district court sentenced the defendant to thirty years on the distribution count and ten years on the firearm count, to be served concurrently.

### 2. *Apprendi* Claim

The defendant asserts that the district court's failure to submit the drug-quantity determination to the jury violates his constitutional rights in light of *United States v. Apprendi*, 530 U.S. 466 (2000) -- an objection defense counsel failed to raise below. Here, although the indictment charged the drug amount (37 grams of cocaine base) in line with the Fifth Amendment requirement of "indictment of a grand jury," the question of the amount of drugs was not presented to the petit jury, arguably in violation of the Sixth Amendment as interpreted in *Apprendi*. Because the defendant did not raise his *Apprendi* claim in the district court, his claim is reviewed only for plain error. In *United States v. Cotton*, 122 S.Ct. 1781 (2002), the United States Supreme Court recently held that when a defendant fails to raise an *Apprendi* objection like this one at trial, enhancement of the sentence by the trial judge based on the amount of drugs does not constitute plain

preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.* Here, knowledge and intent were at issue in the trial. The defendant's past involvement in the sale and distribution of crack cocaine was relevant to show his intent to distribute cocaine and were also part of a common scheme or plan to distribute crack cocaine. The jury was properly instructed to consider the defendant's bad acts only as to whether they demonstrated an intent to distribute crack cocaine as alleged. Thus, we find that the district court did not abuse its discretion by allowing the admission of evidence of the defendant's prior conviction and bad acts.

Finally, the defendant argues that the district court erred by failing to dismiss his indictment because it was procured with perjured testimony. This claim, however, is not reviewable by this Court. At no time before or during his trial did the defendant request a dismissal of his indictment based on the alleged perjury. The failure to raise this Federal Rule of Criminal Procedure 12(b)(2) issue precludes review. Fed. Rule Crim. Proc. 12(b)(2); *see United States v. Hayes*, 218 F.3d 615, 619-20 (6th Cir. 2000). Based on the foregoing, we affirm the defendant's convictions and sentences.

testimony, a juror, Tony Ginter, advised the court that he worked with Gregory's husband at the Northern Kentucky Youth Center in Crittenden, Kentucky. The district court then questioned Ginter, asking him whether he could be impartial in the case. He said he could, and Gregory finished her testimony. There is no evidence in the record that Ginter was biased. As a result, we find that the district court did not commit plain error in failing to exclude Ginter from the jury.

The defendant next argues that the district court erred in admitting evidence of defendant's possession and use of marijuana during the cocaine transaction. The defendant filed a pre-trial motion in limine seeking to exclude this evidence. The district court made a preliminary ruling granting the defendant's motion:

> I am going to exclude it just to be on the safe side, unless it becomes intrinsic to your case or something, or somebody denies it, or he said he was there to sell encyclopedias, or it becomes relevant for some other reason.

J.A. at 290. At trial, however, the district court allowed this evidence in, and the defendant raised no objection. As a result, he is precluded from raising it on appeal unless its admission constitutes plain error. *See United States v. Kelly*, 204 F.3d 652, 655-56 (6th Cir. 2000), *cert. denied*, 530 U.S. 1268 (2000) (a motion in limine is insufficient to preserve an objection to the admission of evidence). We conclude that the trial below was fair and the admission of the evidence was not plain error.

The defendant next asserts that the district court erred by admitting into evidence his prior drug conviction and subsequent bad acts. Specifically, the defendant believes that the district court erred by allowing testimony concerning his prior conviction on May 14, 2000, for drug trafficking, his pre-arrest distribution of crack cocaine to Chris Baker, and his post-arrest supplying of crack cocaine to Mary Carol Henry. Under Fed. Rule Evid. 404(b), evidence of other crimes or bad acts is admissible to prove motive, opportunity, intent,

error because the error does not seriously affect the fairness of the proceeding if the drug amount used was in fact clearly shown. Here the evidence was overwhelming that defendant possessed the minimum drug quantity to justify the sentence imposed.

### 3. Sufficiency of the Evidence Claims

The second ground that the defendant raises on appeal questions the sufficiency of the evidence on both counts. In considering whether there was sufficient evidence to sustain a conviction, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)(emphasis in original).

Count one of the indictment charged the defendant with knowingly and intentionally distributing a controlled substance. Thus, the government was required to prove beyond a reasonable doubt that the defendant (1) knowingly or intentionally distributed crack cocaine, (2) on or about the night of December 2, 1996, and (3) knew at the time of distribution that the substance was cocaine. *United States v. Gibbs*, 182 F.3d 408, 433 (6th Cir. 1999), *cert. denied*, 182 F.3d 408 (1999). The testimony of Baker, Washington, and Delaney all confirmed that the defendant sold an ounce of crack cocaine to Baker at the hotel. In addition, the circumstantial evidence of the cocaine found in the possession of Baker and Delaney after the transaction supports the government's theory. Thus, based on the testimony at trial, a rational trier of fact could have found that the defendant knowingly and intentionally distributed crack cocaine in violation of 21 U.S.C. § 841(a)(1).

Similarly, the defendant's conviction under count two of the indictment is supported by the evidence presented at trial, such that "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Under 18 U.S.C. § 922(g), the government must prove beyond a reasonable doubt that (1) the defendant had a

previous felony conviction and (2) on or about the night in question, the defendant possessed a firearm. *Id.* Defendant's prior drug conviction in May of 1996 is undisputed, leaving only the question of possession. Under § 922(g), either actual or constructive possession is sufficient. *See United States v. Murphy*, 107 F.3d 1199, 1207-08 (6th Cir. 1997).

At trial, Ernesto Delaney testified that he brought the black box to the hotel room. He then described the exchange that occurred in the hotel room:

Q.   What did you do?

A.   I went out to the car and got the black case out of the trunk and came back into the hotel room.

Q.   And what did you do when you got inside?

A.   I sat on the bed, and I'm pretty sure I sat on the bed and opened up the case.

Q.   And what happened?

A.   Nothing happened. We just sat and looked at the pistol, and I closed the case back up.

Q.   Did you give the gun to the defendant?

A.   No ma'am.

Tr. Trans. 146-47. After this testimony, the prosecutor impeached Delaney with his grand jury testimony:

Q.   The top of the page 11 [of the grand jury transcript], the questions are: "You gave him the gun?" the question, and your answer being: "I either give it to him or put it on the bed and he opened the case up." Do you remember saying that before the grand jury?

A.   I don't remember saying that, but it's there in black and white, so obviously I said that.

Tr. Trans. 152-53. The jury then had to decide whether to believe Mr. Delaney's testimony at trial or his grand jury testimony. Viewing the evidence in the light most favorable to the prosecution, we find that a reasonable juror could have made the credibility determination that Delaney was lying at trial and telling the truth at his grand jury proceeding. As a result, we find that the evidence introduced at trial was sufficient to sustain the conviction under § 922(g). In addition, there is clear evidence that the defendant exercised constructive possession over the gun by ordering Delaney to bring it to the hotel room.

### 4. Other Objections

The defendant next claims that the district court erred by not allowing him to sever the two counts and bifurcate the trial. The defendant first moved to sever and bifurcate in a pre-trial motion that was denied. At the end of the evidence, the defendant failed to renew this motion. His failure to renew precludes review by this Court. A motion "to sever counts or co-defendants is deemed waived if it is not renewed at the end of the evidence." *United States v. Hudson*, 53 F.3d 744, 747 (6th Cir. 1995). Thus, we find that the defendant has failed to preserve this issue for appeal.

Defendant also asserts that his Sixth Amendment right to a trial by an impartial jury was violated by the district court's failure to remove a juror for cause during the trial. Because the defendant failed to raise an objection at trial, we review the district court's decision for plain error. *See United States v. Herndon*, 156 U.S. 629, 634 (6th Cir. 1998)(juror bias). Although the defendant has a right to an impartial jury, he also has the burden of showing that the jury was biased. *See Ross v. Oklahoma*, 487 U.S. 81, 85-86 (1988).

At trial, Special Agent Gwen Gregory testified for the prosecution as an expert in the area of interstate nexus and firearms. She testified that the firearm in question was a .38 caliber Smith & Wesson handgun which was manufactured in Springfield, Massachusetts, and traveled in interstate commerce to the Commonwealth of Kentucky. During her