**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Eric SMITH, Defendant–Appellant.**

**No. 01–5057.**

United States Court of Appeals,
Sixth Circuit.

Aug. 15, 2002.

Before MERRITT and DAUGHTREY,

Circuit Judges, and WEBER,* District Judge.

PER CURIAM.

Defendant Eric Smith was convicted of conspiracy to possess cocaine base with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (Count 1), and establishing and maintaining a crack house, in violation of 21 U.S.C. § 856(a)(1) (Count 2). After several appeals and remands, Smith was sentenced to consecutive sentences of 120 months on the first count and 240 months on the second. In this appeal, Smith argues for the first time that the district court violated *Apprendi v. United States,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), by failing to include the drug quantity in the indictment and by failing to submit the drug-quantity determination to the jury. Based on the Supreme Court's decision in *United States v. Cotton,* —— U.S.——, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002), we hold that, in light of the overwhelming evidence to support of the quantity of drugs found by the district court, any *Apprendi* error committed did not constitute "plain error." Under the authority of *Cotton,* we therefore affirm the district court's sentencing order.

## *FACTUAL AND PROCEDURAL BACKGROUND*

The following facts are excerpted from our unpublished opinion in *United States v. Smith,* 110 F.3d 65, 1997 WL 168322 (6th Cir.1997) (*Smith I*):

In December of 1993 an indictment was handed up against the defendant, Eric Smith, and a co-defendant named Anthony Strawder. Count 1 of the indictment charged the men with conspiracy to distribute cocaine base (crack cocaine) and conspiracy to possess the substance with intent to distribute it. Count 2 charged them with establishing and maintaining a crack house at 1467 Menager, a street in Memphis, Tennessee. Both counts related to a nine-and-a-half-week period in the summer of 1992.

Mr Strawder ultimately pleaded guilty. The case against Mr. Smith went to trial before a jury, with Mr. Strawder testifying for the prosecution pursuant to a plea bargain.

The evidence presented by the government at trial showed, among other things, that police had raided the house at 1467 Menager on four separate occasions during the period in question. The first raid, conducted on June 17, 1992, resulted in the discovery and seizure of pipes used for smoking crack cocaine....

The second raid, conducted on August 1, 1992, turned up **1.9 grams** of crack cocaine, a pill bottle in the toilet, two CB radios, two intercoms, a pair of binoculars, and a crack pipe. Discovered outside the house, on a brick ledge below the bathroom window, were **21.39 grams** of crack cocaine wrapped in plastic.

The police returned to the Menager house again on August 4, 1992.... A search of the house turned up **4.97 grams** of crack cocaine, a .22 caliber automatic pistol, and seven rounds of ammunition....

Immediately following the August 4 raid, according to the government's evidence, Mr. Smith admitted to police that there was drug dealing at the house and that "he was running the house...."

In the final raid, conducted on August 18, 1992, some **.32 grams** of crack, .62

---

* The Hon. Herman J. Weber, United States District Judge for the Southern District of Ohio, sitting by designation.

grams of marijuana, a loaded .38 caliber pistol, and a loaded .45 caliber pistol were found inside the house. The police also found **9.69 grams** of crack outside the house near an open window....

On August 23, 1992, police officers saw Mr. Smith arrive at the Menager house driving a white van. He took a package from the van and placed it underneath the house. The officers arrested Mr. Smith and retrieved the package, which was found to contain **14.30 grams** of crack.

Mr. Strawder testified at trial that he and Mr. Smith were business partners who would split the cost of buying crack for resale; that he and Mr. Smith both sold crack from the Menager house during the relevant time period; and that Mr. Smith paid the bills for the house, including the rent, and had arranged for installation of the metal door with tinted glass.

*Id.* at \*1–\*2 (emphasis added).

At sentencing, the district court found that Smith was responsible for 81 ounces, or 2,296.35 grams, of crack cocaine, based on Strawder's testimony that nine ounces of cocaine base were sold through the Menager house each week and evidence that the conspiracy lasted nine weeks. *Smith I,* 1997 WL 168322 at \*3. In an appeal taken before *Apprendi* was decided, Smith argued that this amount was not supported by sufficient evidence. We rejected this argument, holding that the district court's determination of drug quantity was not clearly erroneous:

Mr. Strawder's testimony carried at least a "minimum indicium of reliability beyond mere allegation." The trial evidence established that Mr. Strawder was deeply involved in the activities at the Menager house. He testified at the sentencing hearing that he was present enough of the time to see the amount of

crack being moved through the place. Given that Mr. Strawder himself was selling at least an ounce of crack there each week, this does not seem implausible.

*Id.* (internal citation omitted). This appeal requires us to review that finding in light of *Cotton.*

## DISCUSSION

Smith argues that in imposing his sentence, the district court violated *Apprendi v. United States,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000),because the indictment did not include the drug quantity and the jury was not asked to determine the drug quantity. Since this issue was not raised in the district court, we review the determination of the district court for plain error. *See United States v. Schulte,* 264 F.3d 656, 660 (6th Cir.2001). "To establish plain error, a defendant must show (1) that an error occurred in the district court; (2) that the error was plain, i.e., obvious or clear; (3) that the error affected defendant's substantial rights; and (4) that this adverse impact seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Id.*

In this case, relief for the defendant is foreclosed by the Supreme Court's recent decision in *Cotton,* in which the Court held that an enhancement of a sentence based on a trial judge's determination of the drug amount does not "seriously affect the fairness, integrity, or public reputation of judicial proceedings" (and thus, does not constitute plain error), if the evidence of the drug amount is "overwhelming." *See id.,* 122 S.Ct. at 1786; *see also United States v. Harris,* 293 F.3d 970, 974 (6th Cir.2002) (upholding defendant's sentence based on *Cotton* because "the evidence was overwhelming that defendant possessed

the minimum drug quantity to justify the sentence imposed"). Here, the evidence to support a finding that Smith was responsible for at least 50 grams of cocaine base—the amount that would subject Smith to a mandatory minimum sentence of 120 months—is similarly clear. Strawder, Smith's co-defendant, testified that Smith was responsible for selling nine ounces of cocaine base each week during the nine week conspiracy, which amounts to a total of 81 ounces, or *2,296.35 grams,* of cocaine base. In *Smith I,* this court found that Strawder was "deeply involved in the activities at the Menager house" and that Strawder's testimony as to the amount of cocaine base sold at the crack house "does not seem implausible." *Id.,* 1997 WL 168322 at *3. Moreover, as we found in *Smith I,* the police *recovered* a total of 52.57 grams of cocaine base during their four raids of the house. *See id.* at *1–*2. That fact alone is dispositive of the question raised by this appeal. Additional evidence undeniably supports the conclusion that the amount of crack involved in the operation far exceeded the minimum required to support the sentence imposed in this case.

## CONCLUSION

For the reasons set out above, we AFFIRM the judgment of the district court.