NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0235n.06
Filed: May 5, 2008

**07-5258**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| ANDRE C. FINNELL, | ) | EASTERN DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | |

Before:  DAUGHTREY, COOK, and FARRIS,* Circuit Judges.

**PER CURIAM.**  The defendant, Andre Finnell, appeals both his conviction for possession with intent to distribute five grams or more of cocaine base (crack cocaine) and the 150-month prison sentence imposed upon him for that offense.  Specifically, Finnell asserts that the district court erred by allowing evidence of a prior drug-trafficking conviction to be presented to the jury and by enhancing the defendant's guideline offense level for obstruction of justice.  Finding no reversible error in connection with either challenge, we affirm the judgment of the district court.

## *FACTUAL AND PROCEDURAL BACKGROUND*

---

*The Hon. Jerome Farris, United States Circuit Judge for the  Ninth Circuit Court of Appeals, sitting by designation.

Shortly after midnight on March 28, 2006, Officer Jonathan Mangus was sitting in his patrol car in a Covington parking lot explaining police procedures and operations to a private citizen participating in a ride-along program during Mangus's shift. At that time, the officer "observed a male subject standing on the corner of Robbins and Banklick and observed him looking down the street, southbound on Banklick. He looked there a few times; maybe two, three times, and then looked back at [Mangus] each time." When Mangus drove his patrol car closer to the intersection to obtain a better view of the "male subject," Mangus saw a white male cross the street and engage the "male subject" in conversation. As the officer continued to approach the two men, the white male "[t]ook off in a hurried manner, and he took off between the two houses that were immediately – that they were right in front of."

His suspicions aroused, Mangus then engaged "the male subject" he had initially observed in conversation and determined that he claimed to reside in the building in front of which he was then standing. When the individual, later identified as the defendant, offered Mangus his driver's license as proof of identification, the officer called in the license number and was informed that an outstanding warrant from Ohio had been issued for the defendant's arrest. At that time, Mangus performed an initial pat-down of Finnell to check for weapons, handcuffed the defendant, and placed him in the back of the patrol car, although he informed Finnell that he was not then under arrest.

As Mangus was placing Finnell in the patrol car, Officer Jody Rigney arrived on the scene and remained there for the duration of the encounter with the defendant. In fact, after Mangus received additional confirmation of the outstanding warrant against Finnell, Rigney held a flashlight as Mangus removed the defendant from the patrol car and conducted a more thorough search of Finnell's person incident to his custodial arrest. During that second pat-down, Mangus observed a "plastic baggie with a large quantity of suspected crack cocaine" fall out of the defendant's pants and land on Finnell's right shoe. The officer seized that evidence, as well as a cell phone, three $20 bills, and three $1 bills from the defendant.

Rigney confirmed that Mangus reached down to the ground and picked something up after shaking the defendant's pant leg. Finnell contended, however, both at the scene of the arrest and at trial, that Mangus planted the baggie of crack cocaine to frame him and that he (Finnell) neither possessed the crack cocaine nor intended to distribute it.

At trial, additional testimony was offered to establish that the substance in the baggie seized during the arrest was indeed crack cocaine, that the baggie contained approximately 11 grams of the controlled substance, and that possession of such an amount was consistent with drug-trafficking, not personal use. The parties also stipulated before the jury that Finnell had previously been convicted in Kentucky state court on May 3, 1999, for first-degree trafficking in a controlled substance based upon the defendant's possession of 1.253 grams of crack cocaine on December 31, 1998.

The district judge admonished the jurors that they could consider the evidence of Finnell's prior conviction "only on the issue of the defendant's intent and knowledge in committing the crime charged in the indictment" and for no other purpose. A similar limiting instruction was also given during the jury charge delivered immediately prior to the jury's deliberations on Finnell's guilt or innocence.

The jury credited the testimony of the prosecution witnesses and ultimately concluded that the defendant was guilty of possessing with intent to distribute "5 grams or more of a mixture or substance containing a detectable amount of cocaine base (crack cocaine)." At sentencing, the district court concluded that Finnell's testimony at trial that he had been framed amounted to perjury, enhanced the applicable guideline offense level by two for obstruction of justice, and imposed a 150-month prison sentence upon the defendant. Finnell now appeals to this court, challenging both the validity of his conviction and the calculation of his sentence.

## DISCUSSION

### Admissibility of Other Crimes Evidence under Rule 404(b)

Finnell first argues on appeal that the district court erred in admitting into evidence the 1999 state-court conviction for first-degree drug trafficking involving the possession of crack cocaine with intent to distribute. According to the defendant, that conviction, seven years old at the time of this trial, was so remote in time and so factually dissimilar to the

present offense that the evidence should have been excluded as unduly prejudicial when compared with the probative value of the information.

In response to Finnell's argument, the United States Attorney initially contends that the defendant waived this claim by failing to enter a contemporaneous objection when the stipulated prior conviction was mentioned to the jury. Although it is true that Finnell did not lodge an objection at the time the evidence of the earlier conviction was introduced, he had earlier filed with the court a motion *in limine* to exclude such information, a motion that the district judge overruled in a six-page order. In light of that court decision, Finnell deemed it unnecessary to reiterate his objection to the admissibility of the evidence. Indeed, in *United States v. Brawner*, 173 F.3d 966 (6th Cir. 1999), we addressed a circuit split on the issue of the necessity of lodging a second objection in the face of an adverse ruling on a motion *in limine* and unambiguously held:

> [I]f the trial court has made an explicit and definitive ruling on the record of the evidentiary issues to be decided, and has not indicated that the ruling is conditioned upon any other circumstances or evidence, then counsel need not renew the objection at the time the evidence is offered (or would have been offered but for an exclusionary ruling) in order to preserve the error for appeal. However, if the court's ruling is in any way qualified or conditional, the burden is on counsel to raise objection to preserve error.

*Id.* at 970.

Curiously, the government fails to cite *Brawner* in its appellate brief. Instead, the prosecution relies upon the decisions rendered in *United States v. Kelly*, 204 F.3d 652 (6th Cir. 2000), and *United States v. Harris*, 293 F.3d 970 (6th Cir. 2002), for the proposition that a defendant's motion *in limine* is insufficient to preserve an evidentiary objection at trial. This approach is flawed for numerous reasons. First, to the extent that *Kelly* and *Harris*, conflict with *Brawner*, the earlier decision must control. *See Salmi v. Sec'y of Health and Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985) (a panel of this court may not overrule a prior panel's decision absent an inconsistent decision by the United States Supreme Court or a contrary ruling by this court sitting *en banc*). Second, and more important, a careful reading of *Kelly* and *Harris* indicates that those two cases involved situations that were not only exempted from the reach of *Brawner* but also are in no way analogous to the facts of the present dispute.

*Kelly*, for example, involved a defendant who filed a motion *in limine* to preclude admission of evidence relating to certain prior convictions; notably, however, "[t]he record does not disclose that the district court ever ruled on this motion." *Kelly*, 204 F.3d at 655. Consequently, even under the rationale of *Brawner*, the defendant was required to file an objection to the introduction of the testimony in order to force a ruling on the allegation of error.

In *Harris*, the district court initially granted the defendant's motion to exclude evidence of other crimes committed by the defendant but conditioned that exclusion on the

expectation that the testimony would not later become intrinsic or be denied by the defendant on the stand. "At trial, however, the district court allowed this evidence in, and the defendant raised no objection. As a result, he is precluded from raising it on appeal unless its admission constitutes plain error." *Harris*, 293 F.3d at 976. Because it was conditional, the ruling in *Harris* is likewise not controlled by the *Brawner* ruling.

By contrast, Finnell was *not* required to lodge a second objection to admission of the testimony of his prior drug trafficking conviction. In ruling upon the motion *in limine*, the district judge clearly, definitively, and without reservation ruled that the government would be allowed to introduce the challenged testimony.

Our review of a district court's ultimate determination of the admissibility of evidence at trial is limited. We evaluate such a decision only to determine whether the district judge abused his or her discretion in allowing the testimony to be presented to the jury. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997); *Trepel v. Roadway Express, Inc.*, 194 F.3d 708, 716 (6th Cir. 1999). "A district court abuses its discretion, *inter alia*, 'when it applies the incorrect legal standard [or] misapplies the correct legal standard.'" *In re Grand Jury Subpoenas*, 454 F.3d 511, 515 (6th Cir. 2006) (quoting *Deja Vu of Cincinnati, LLC v. Union Twp. Bd. of Trustees*, 411 F.3d 777, 782 (6th Cir. 2005) (*en banc*)).

Generally, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). Rule 404(b) additionally provides:

> It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

In *United States v. Merriweather*, 78 F.3d 1070 (6th Cir. 1996), we explained that, upon objection by the defendant, the proponent of evidence indicating that the defendant committed another crime or bad act "should be required to identify the *specific* purpose or purposes for which the government offers the evidence." *Id.* at 1076. The district court must then "determine whether the identified purpose . . . is 'material'; that is, whether it is 'in issue' in the case." *Id.* at 1076-77. Next, if it is indeed "material," "the court must *then* determine . . . whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice under Rule 403." *Id.* at 1077. Finally, "[i]f the evidence satisfies Rule 403, then, after receiving the evidence, the district court must 'clearly, simply, and correctly' instruct the jury as to the *specific* purpose for which they may consider the evidence." *Id.* (citation omitted).

The challenged evidence here was introduced in this case to assist the jury in determining whether the defendant possessed the specific intent required for a conviction of possession of a controlled substance with intent to distribute, in the face of his defense that the contraband had been planted by the police. Indeed, Finnell himself concedes that his intent was at issue in this matter and that the district judge adequately instructed the

jury on the limited uses to which the Rule 404(b) evidence could be put. Thus, the defendant's objection to the introduction of the evidence centers solely upon Finnell's contention that the prejudicial nature of the testimony outweighed any probative value the evidence would have. Specifically, the defendant submits that the 1999 conviction was too remote in time and too factually dissimilar to be able to shed light on Finnell's intent on March 28, 2006.

As the district judge concluded, however, "[a]lthough . . . there are numerous differences between the prior conduct and the instant alleged offense, these differences are not so significant to preclude their admissibility under FRE 404(b)." Significantly, Finnell's prior conviction also involved crack cocaine. In both the prior conviction and in this case, an apparent hand-to-hand transaction between the defendant and another individual was interrupted by the approach of law enforcement officials. In both instances, relatively large amounts of crack cocaine inconsistent with personal use were found on the streets of Covington, Kentucky, in plastic baggies after being hidden by the defendant – once under a vehicle and once inside his clothing.

Furthermore, although seven years did pass between Finnell's 1999 conviction and his March 2006 arrest, the district judge noted that the present offense was "not so remote in time to preclude admission under 404(b)." As explained by the court in its written order denying the defendant's motion *in limine*:

The time gap is far less when the Court considers the fact that Defendant was not finally released on his [Kentucky state court] drug trafficking conviction until March 21, 2003, which is just slightly more than three years before the alleged instant offense. According to U.S. Probation Officer John D'Alessandro, Defendant was sentenced on the First Degree Trafficking in a Controlled Substance conviction on May 3, 1999 to 61 months and was paroled on that conviction on March 27, 2001. Defendant's state parole was subsequently revoked in April, 2002 when the parole board ordered that he serve out the remainder of his sentence. Defendant was released from the Kentucky Department of Corrections on March 21, 2003. Defendant's pretrial services report also indicates that he was arrested numerous times after being released for several misdemeanor and felony charges. Based on the information received from U.S. Probation, Defendant served a total of approximately six months for these various convictions. Therefore, although slightly more than seven years separates the "other act" evidence from the date of the alleged instant offense, Defendant was imprisoned on separate state offenses for the majority of that time.

We conclude that under these circumstances, the district judge in this matter did not abuse his discretion in his evaluation of whether the probative nature of the prior offense outweighed any prejudicial effect that might result from admission of the evidence. In any event, any error in the admission of evidence of the prior conviction to establish Finnell's intent to distribute crack cocaine on March 28, 2006, must be considered harmless in light of the testimony also offered at trial by other witnesses. Most damningly, Matthew Duane Rolfsen, an officer with the Northern Kentucky Drug Strike Force, testified without contradiction that a $20 rock of crack cocaine typically weighs between 0.1 grams and 0.2 grams. Consequently, the 11 grams of crack cocaine possessed by Finnell on March 28, 2006, could possibly result in as many as 110 sales, with a street price of as much as $2,200. Furthermore, Rolfsen claimed that he had never seen 11 grams of crack cocaine possessed for personal use; rather, such an amount of the controlled substance has

"always been consistent with trafficking." Thus, even without evidence of the defendant's prior trafficking conviction, sufficient evidence was admitted at trial to establish Finnell's intent to distribute the drugs in his possession.

## Sentencing Enhancement

Similarly, no reversible error occurred as a result of the district court's decision to increase the defendant's guideline offense level because of a finding that Finnell obstructed the administration of justice. In calculating the appropriate guideline range for the defendant's crime, the district judge determined that the base offense level of 26 that would normally be applied to an individual guilty of trafficking 11 grams of crack cocaine should be increased to level 28 because Finnell perjured himself at trial by testifying under oath that he did not possess the contraband allegedly recovered from him.

The defendant argued before the district court and now argues on appeal that such an adjustment improperly penalizes him for exercising his constitutional right to testify in his own defense. According to Finnell, the mere fact that the jury chose to credit the testimony of prosecution witnesses rather than his trial testimony does not necessarily mandate a finding that the defendant committed perjury.

To a certain extent, Finnell is correct in his assertion. Indeed, application note 2 to section 3C1.1 of the sentencing guidelines states:

> This provision is not intended to punish a defendant for the exercise of a constitutional right. A defendant's denial of guilt (*other than a denial of guilt under oath that constitutes perjury*), refusal to admit guilt or provide information to a probation officer, or refusal to enter a plea of guilty is not a basis for application of this provision. In applying this provision in respect to alleged false testimony or statements by the defendant, the court should be cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice.

USSG §3C1.1, comment. (n.2) (emphasis added). Fortunately, however, we need not resolve in this appeal whether Finnell's version of the events of March 28, 2006, was merely a "denial of guilt" that the jury chose not to believe or "a denial of guilt under oath that constitutes perjury."

Even assuming that the district court did err in increasing the base offense level by two, such error was harmless, did not affect Finnell's sentence, and cannot serve as the basis for a reversal of the sentencing decision. *See* Fed. R. Crim. P. 52(a) ("[a]ny error. . . . that does not affect substantial rights must be disregarded"). Had the district court not added the two-level adjustment for obstruction of justice, the defendant's applicable guideline sentencing range (as a level 26, criminal history category VI offender) would have been 120-150 months. After adding the two levels to Finnell's base offense level, the district judge determined that the defendant's guideline range (as a level 28, criminal history category VI offender) was 140-175 months. Examining the other sentencing factors listed in section 3553(a) of title 18 of the United States Code, however, the sentencing judge explained:

I think that even without the two-level enhancement, the sentence that the Court is going to impose would be the same, even if the Sixth Circuit were to reverse on remand, because all the factors together in 3553(a) lead me to conclude that the sentence I'm about to impose is the appropriate sentence.

So pursuant to the Sentencing Reform Act of 1984, and consistent with the Supreme Court's decision in [*United States v. Booker*, 543 U.S. 220 (2005)], I believe that the sentence that I'm about to impose is sufficient but not greater than necessary to comply with the purposes of 18 U.S. Code Section 3553(a). Accordingly, it's going to be the judgment of the Court that the defendant, Andre Finnell, is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 150 months. I'm also going to recommend that you participate in the 500-hour residential drug treatment program offered through the Bureau of Prisons.

I do find if the Sixth Circuit were to reverse, as I previously stated, on the 3C1.1 enhancement, I still believe that based upon the factors in 3553(a), I would impose the same sentence on remand; that is, the 150 months, because I believe it's the appropriate sentence, primarily because of the history and characteristics of the defendant, which I find to be extensive. The criminal history is nothing more than extensive.

Clearly, a district judge may not insulate a sentence from effective appellant review merely by announcing that sentencing calculations under the guidelines alone and pursuant to the wide-ranging considerations of 18 U.S.C. § 3553(a) would be identical. Based upon the record in this case, however, we conclude that Finnell's 150-month sentence was both procedurally and substantively reasonable, especially in light of the defendant's disturbingly extensive criminal history.

## CONCLUSION

For the reasons set out above, we AFFIRM the judgment of conviction and the sentencing order entered by the district court.