NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0074n.06

Case No. 22-5540

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Feb 21, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| STACEY WILLIAMS, JR., | ) | DISTRICT OF TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | O P I N I O N |
| | ) | |

Before: BOGGS, GILMAN, and NALBANDIAN, Circuit Judges.

**NALBANDIAN, Circuit Judge.** Stacey Williams, Jr., sold fentanyl to Joshua Catlett, who shared it with Christopher Noon. By the next morning, Noon had died of an overdose. After a jury trial, Williams was convicted of distributing a mixture containing fentanyl and acetyl fentanyl, in violation of 21 U.S.C. § 841(a)(1). Because of the resulting death and Williams's prior felony drug conviction, Williams received a mandatory life sentence under 21 U.S.C. § 841(b)(1)(C). He now appeals, challenging the sufficiency of the evidence, the government's expert testimony, and the application of his sentence enhancement. We AFFIRM.

## I.

On November 21, 2018, Christopher Noon contacted Joshua Catlett to buy heroin. Catlett reached out to Defendant Stacey Williams, Jr., from whom he had bought drugs every day for 10

months. Williams agreed to meet at a local Family Dollar. He warned Catlett to be careful and that the drugs were strong, which Catlett took as a warning that Williams's "heroin" contained fentanyl.

Noon promptly injected the fentanyl and went unresponsive. Noon's companion, Katherine Clark, revived him with an injection of methamphetamine, and he regained consciousness. For a while afterward, Noon was back to normal, walking, talking, and eating without issue. But after returning home, Noon used more of Williams's fentanyl. The next morning, Noon's father found him unconscious in the bathroom beside a drug stash. At that point, Noon was already dead. An autopsy revealed that Noon's blood contained fentanyl at almost 15 times the lethal limit.

A jury convicted Williams of distributing a mixture containing fentanyl and acetyl fentanyl, and it applied an enhancement for the additional finding that Noon's death resulted from the fentanyl that Williams had distributed.[1] Because of the enhancement, Williams received a mandatory life sentence. He now appeals his conviction and sentence, claiming that (1) the evidence was insufficient to sustain a conviction, (2) the district court improperly admitted scientific evidence, and (3) the sentencing enhancement was inapposite.

## II.

## A.

First, Williams argues that the evidence was insufficient to convict him under 21 U.S.C. § 841 for distribution of a controlled substance resulting in death. When we review insufficiency challenges, we ask "whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Hughes*, 505 F.3d 578, 592 (6th Cir. 2007) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Importantly, "[t]he appellate court must

---

[1] The jury also convicted Williams on seven other charges, but none of them are at issue in this appeal.

2

view all evidence and resolve all reasonable inferences in favor of the government." *Id.* "Circumstantial evidence alone is sufficient to sustain a conviction." *United States v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999).

Here, the government had to first prove beyond a reasonable doubt that Williams knowingly or intentionally distributed fentanyl and acetyl fentanyl with the knowledge that they were controlled substances. *United States v. Harris*, 293 F.3d 970, 974 (6th Cir. 2002). And to apply § 841(b)(1)(C)'s penalty enhancement, it is sufficient that the prosecution show that the fentanyl Williams distributed was "a but-for cause of [Noon's] death." *Burrage v. United States*, 571 U.S. 204, 219 (2014). The evidence at trial was sufficient to prove each element.

To show knowing distribution, the government introduced evidence from Williams's co-defendant, Joshua Catlett, who testified that he went to buy heroin from Williams on the night in question. Further, Catlett testified that, at the time of sale, Williams "warned [him] to be careful . . . that it was strong," which Catlett took as a warning that the package actually "had fentanyl." R. 187, Trial Tr. Vol. 2, pp. 196–97, PageID 1895–96.

"It is well-settled that uncorroborated testimony of an accomplice may support a conviction in federal court." *United States v. Matthews*, 31 F.4th 436, 448 (6th Cir. 2022) (quoting *Spearman*, 186 F.3d at 746). And, contrary to Williams's suggestion, we have applied this principle in cases involving mandatory life sentences. *See, e.g.*, *United States v. Sherrill*, 972 F.3d 752, 766 (6th Cir. 2020); *United States v. Ledbetter*, 929 F.3d 338, 354 (6th Cir. 2019).

Catlett's testimony, moreover, was far from uncorroborated. Another witness, Katherine Clark, testified that Catlett bought the fentanyl from someone driving a gold or silver crossover, which could reasonably describe the gold Ford Expedition that Williams used two weeks earlier to sell "heroin" to a confidential informant. And a lab test showed that the "heroin" Williams sold

to the confidential informant, like the "heroin" found by Noon's body, was also actually fentanyl and acetyl fentanyl.

Further, resolving all inferences in favor of the government, *Hughes*, 505 F.3d at 592, a rational trier of fact could find that Williams knew he was distributing a controlled substance. Catlett testified that he had been buying heroin from Williams almost every day for 10 months, and, over those 10 months, the substance of the drugs noticeably changed in consistency and became "extremely more potent," indicating that Williams had replaced the heroin with fentanyl. R. 187, pp. 196, 198–99, PageID 1895, 1897–98. Catlett also testified that whenever Williams had to leave to replenish his drug supply, he would put Catlett in touch with other drug dealers. A trier of fact could reasonably infer that someone with Williams's experience and drug-trafficking connections understood that he was distributing controlled substances.

Finally, a rational trier of fact could have found that Noon would not have died but for the effects of Williams's fentanyl. First, although the government's expert medical examiner conceded that "an individual can overdose from any amount of methamphetamine," Clark testified that Noon was walking, talking, and eating with no issue after having used all of Clark's methamphetamine. A toxicologist testified "that any adverse effects you would have seen from that onetime use [of methamphetamine] would have probably already occurred." And from that point, the only drug Noon could access was Williams's fentanyl, which he kept using. By itself, the fentanyl found in Noon's body was almost 15 times the lethal minimum. And the toxicology results corroborated Clark's testimony that Noon used fentanyl, overdosed, was revived with methamphetamine, recovered, and then used more fentanyl before finally dying.

A rational trier of fact could have found that Noon would not have died but for the effect of fentanyl distributed by Williams and therefore found each element of Williams's conviction beyond a reasonable doubt.

**B.**

Second, Williams argues that the district court improperly admitted scientific testimony from an expert in general law enforcement and drug-trafficking organizations. Specifically, he challenges Task Force Officer Brendan Deboer's testimony on the differences between heroin and fentanyl and their potency compared to morphine, as well as his reference to carfentanil—a potent fentanyl analog.

We review evidentiary rulings under the abuse-of-discretion standard. *United States v. Hazelwood*, 979 F.3d 398, 408 (6th Cir. 2020). We reverse them "only where the district court's erroneous admission of evidence affects a substantial right of the party." *United States v. White*, 492 F.3d 380, 398 (6th Cir. 2007) (citing Fed. R. Evid. 103(a)). To properly admit expert testimony, the district court must find the expert qualified and his testimony both relevant and reliable. *United States v. Anderson*, 67 F.4th 755, 767 (6th Cir. 2023).

An expert is qualified if (1) his knowledge will help the factfinder understand the evidence or determine a fact in issue, and (2) his testimony is based on sufficient data, (3) is the product of reliable principles, and (4) reflects a reliable application of those principles to the facts of the case. *See* Fed. R. Evid. 702. Here, Deboer spent nine years on a task force investigating drug-trafficking organizations involving heroin and fentanyl and identifying drug-related deaths.

In addition, at the time of trial, Deboer was also an instructor in "drug trends in criminal interdiction," which includes identification of heroin, fentanyl, and fentanyl analogs. R. 186, Trial Tr. Vol. 1, p. 41, PageID 1663. And he had personal experience operating a spectrum analyzer to

5

distinguish the relative potencies of fentanyl and heroin. Therefore, Deboer had the qualifications necessary to give expert testimony describing heroin, fentanyl, and fentanyl analogs. *See United States v. Lopez-Medina*, 461 F.3d 724, 743 (6th Cir. 2006) (describing "prior experience and training in investigating narcotics-related crimes" and six years of DEA experience as "obvious qualifications").

Deboer's testimony about the differences between heroin and fentanyl is relevant. This case concerns heroin switched out for fentanyl and a subsequent overdose. And Deboer explained that drug-trafficking organizations commonly use a blender to mix fentanyl with inert powder, increasing the risk of death with unpredictably strong dosing because they cannot make an even distribution. Deboer's reference to carfentanil—a potent fentanyl analog he said was "10,000 times more potent than morphine," R. 186, Trial Tr. Vol. 1, p. 56, PageID 1678, was also relevant. Even though carfentanil is not involved in this case, it is a fentanyl analog, and its significant potency further illustrates the unpredictability of fentanyl doses mixed with fentanyl analogs like the one that ultimately caused Noon's death.

And Deboer's testimony regarding potency is reliable. The testimony was based on Deboer's own spectrum analysis, *Id.* at 55–56, PageID 1677–78, and it was corroborated by the toxicology expert, who described fentanyl as "50 to 100 times more potent than morphine," *compare* R. 186, p. 56, PageID 1678, *with* R. 188, Trial Tr. Vol. 3, p. 89, PageID 2088.

The district court did not abuse its discretion by admitting Deboer's expert testimony.

## C.

Finally, Williams argues that his sentence enhancement was improper under 21 U.S.C. § 851, which defines proceedings to establish prior convictions. He claims that (1) the district court improperly found facts, (2) the jury received inaccurate instructions, and (3) Williams's prior

conviction was not a "felony drug offense." When they are preserved for appeal, we review § 851 challenges under the abuse-of-discretion standard; otherwise we review under the plain-error standard. *United States v. Young*, 847 F.3d 328, 361 (6th Cir. 2017).

First, an enhancement for recidivism like the § 851 enhancement "is as typical a sentencing factor as one might imagine," *Almendarez-Torres v. United States*, 523 U.S. 224, 230 (1998), and therefore needs no separate fact finding by the jury, *United States v. Brown*, No. 21-1663, 2023 WL 1861318, at *8 (6th Cir. Feb. 9, 2023) (citing *Almendarez-Torres* in the context of a § 851 challenge). The district court did not abuse its discretion by finding Williams's prior conviction itself, rather than sending the question to the jury.

Second, although the jury instructions did not copy Sixth Circuit Pattern Jury Instruction 14.02B verbatim, they did include the necessary elements. The district court explained that the jury must find that Williams knowingly or intentionally distributed fentanyl and acetyl fentanyl with the knowledge that they were controlled substances. Then, for the enhancement, the court explained that the government must prove that Noon's death would not have occurred if not for the controlled substance distributed or caused to be distributed by Williams.

Further, the district court clarified that, to apply the enhancement, the jury must determine that Williams was part of the distribution chain that connected Noon with his fatal dose of fentanyl. Even though the verdict form did not reproduce the court's entire instructions, the court never said that it would, instead describing the form as what the jury would "use to record your verdict." R. 189, Trial Tr. Vol. 4, p. 50, PageID 2240. And the judge informed the jury that it must find each element beyond a reasonable doubt. The district court did not abuse its discretion by properly instructing the jury.

Finally, although Williams conceded at sentencing that his 2012 conviction qualified as a "felony drug offense" under federal law, he now disputes that classification on appeal. So we review under the plain-error standard. Federal law defines a felony drug offense as "an offense that is punishable by imprisonment for more than one year under any law . . . that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." 21 U.S.C. § 802(44).

Williams was convicted in 2012 under Mich. Comp. Laws § 333.7403(2)(a)(v). That law made it "a felony punishable by imprisonment for not more than 4 years" to possess of at least 25 grams of a "controlled substance classified in schedule 1 or 2 that is a narcotic drug or a drug described in section 7214(a)(iv)." Mich. Comp. Laws § 333.7403(2)(a)(v) (2010). At the time, "section 7214(a)(iv)" listed forms of cocaine. Mich. Comp. Laws § 333.7214(a)(iv) (1982). Federal law defines cocaine as a narcotic drug, 21 U.S.C. § 802(17)(D), so Williams's prior offense was punishable by imprisonment for more than one year and involved narcotic drugs. Thus, the district court did not err, let alone plainly, by deeming Williams's prior conviction a "felony drug offense" under federal law.

So Williams's sentence enhancement was proper under 21 U.S.C. § 851.

**III.**

For the reasons set forth above, we AFFIRM Williams's convictions and sentence.